**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ARBITRON INC.,

        Plaintiff,

vs.                                         Case No. 3:13-cv-716-J-34JRK

RENDA BROADCASTING
CORPORATION,

        Defendant.

_____

**ORDER**

     **THIS CAUSE** is before the Court on Plaintiff Arbitron, Inc.'s ("Arbitron") First Amended

Complaint (Doc. No. 7; Amended Complaint); Defendant Renda Broadcasting Corporation's

("Renda") Motion to Dismiss Plaintiff's First Amended Complaint and Memorandum of Legal

Authority in Support (Doc. No. 16; Motion); the Memorandum of Law of Plaintiff, Arbitron [*sic*]

Inc., in Opposition to Defendant's Motion to Dismiss the First Amended Complaint (Doc. No.

25; Opposition Memorandum); and Renda Broadcasting Corporation's Reply Brief in Support

of its Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 26; Reply).

**I.**    **Background**

     Arbitron initiated this action by filing its initial complaint (Doc. No. 1; Complaint) on

June 18, 2013.  Upon review, the Court, <u>sua</u> <u>sponte</u>, issued an order (Doc. No. 5) striking the

Complaint as an impermissible "shotgun pleading."  Thereafter, on June 25, 2013, Arbitron

filed its Amended Complaint, which is the operative pleading in this action.

     Arbitron sues Renda, alleging copyright infringement, as well as a violation of Florida's

Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.201, <u>et.</u> <u>seq.</u> ("FDUTPA").  <u>See</u>

generally Amended Complaint.  Arbitron is a media and marketing research firm that, among other things, collects radio audience listening data.  Id. at ¶¶ 7, 8.  The copyrighted works at issue in this case are Arbitron's Reports and Databases which contain radio audience estimates and station rankings created from Arbitron's radio audience listening data.  Id. at ¶¶ 8-9.  Renda owns, controls, and operates multiple radio stations throughout the United States, including the Jacksonville, Florida area.  Id. at ¶ 4.  Arbitron alleges that Renda subscribed to Arbitron's radio audience estimates and Reports for Renda's Jacksonville stations from May 2008 through December 2010.  Id. at ¶ 13.  Beginning in or about May 2011, and continuing through at least December 2012, Arbitron contends that Renda illicitly obtained copies of the Arbitron Reports and Databases from a Jacksonville, Florida advertising agency ("the Agency") that was an Arbitron subscriber.  Id. at ¶ 19.

In the First Claim for Relief, Arbitron alleges that Renda infringed Arbitron's copyright in the Reports and Databases by reproducing and distributing these materials without a license or authorization.  Id. at ¶¶ 18-35.  In the Second Claim for Relief, Arbitron alleges that Renda induced the Agency to infringe Arbitron's copyright by providing Renda with copies of Arbitron's Reports and Databases.  Id. at ¶¶ 36-44.  Finally, in the Third Claim for Relief, Arbitron alleges that Renda violated FDUTPA by improperly acquiring and using Arbitron's copyrighted materials in making programming decisions and determining advertising rates without a license or authorization.  Id. at ¶¶ 45-51.  For these alleged violations, Arbitron seeks damages and injunctive relief.  See generally id.

On August 22, 2013, Renda filed the Motion, in which it argues that the First and Second Claims for Relief should be dismissed because the Amended Complaint fails to set

forth plausible grounds for relief for copyright infringement and contributory infringement. Motion at 5-8.  Renda identifies numerous alleged deficiencies with these claims, including that Arbitron alleges "sweeping legal conclusions[;]" that Arbitron "repeatedly" relies upon "information and belief[;]" and that Arbitron does not allege sufficient details regarding the fourteen "relevant" Reports and Databases.  Id.  Renda also argues that Arbitron's failure to identify the Agency from which Renda allegedly received the Reports and Databases renders Arbitron's inducement claim insufficient to impart "fair notice."  Id. at 8.  Additionally, Renda argues that these claims violate Rules 8 and 10 of the Federal Rules of Civil Procedure (Rule(s)) because they impermissibly lump multiple claims together in that each claim relates to fourteen different copyrights.  Id. at 9.  In this regard, Renda asserts that "[s]eparate and distinct allegations are required to show that any particular alleged copyright was infringed."  Id. at 9-10.  With regard to Arbitron's FDUTPA claim, Renda asserts that this claim is preempted by the Copyright Act because the rights Arbitron seeks to protect fall within the subject matter of the copyrights and because the rights Arbitron asserts under FDUTPA are equivalent to the exclusive rights provided by section 106 of the Copyright Act.  Id. at 10-12. Renda also argues that even if Arbitron's FDUTPA claim is not preempted, it should be dismissed because Arbitron "fails to set forth plausible grounds upon which relief can be granted" and because "Arbitron has failed to allege acts that would constitute violations under the statute."  Id. at 14-18.  Arbitron filed its Opposition Memorandum on September 25, 2013, and Renda filed its Reply on October 8, 2013.  This matter is ripe for review, and the Court will address each of Renda's grounds for dismissal in turn.

## II.     Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009);  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).    Nonetheless, the plaintiff must still meet some minimal pleading requirements.  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions[,]" which simply "are not entitled to [an] assumption of truth."  See Iqbal, 556 U.S. at 678-79.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III.    Analysis

#### A.    Failure to State a Claim

##### 1.    Copyright Infringement

In the First Claim for Relief, Arbitron alleges that Renda infringed Arbitron's copyrights in the Reports and Databases by reproducing and distributing these materials.  Id. at ¶¶ 18-35. "To establish a prima facie case of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1232-33 (11th Cir. 2010) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)).

Renda raises a variety of arguments in support of its claim that Arbitron's allegations do not establish the level of plausibility required under the Rules and the Supreme Court's decisions in Twombly and Iqbal.  First, Renda points out that Arbitron relies repeatedly on "information and belief," and that these allegations are "little more than 'belief' and insufficient 'information.'" Motion at 6, 8.  However, "the mere fact that a complaint includes allegations asserted on information and belief is not, in and of itself, a basis for dismissal." Latele Television C.A. v. Telemundo Commc'ns Grp., LLC, No. 12-22539-CIV, 2013 WL 1296314, at *11 (S.D. Fla. March 27, 2013) (citing Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)).  Indeed, "[t]he Twombly plausibility standard . . . does not prevent a plaintiff from

'pleading facts alleged upon information and belief' where the belief is based on factual information that makes the inference of culpability plausible." <u>Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.</u>, No. 12-80393-CIV, 2013 WL 1176252, at *3 (S.D. Fla. March 20, 2013) (citing <u>Iqbal</u>, 556 U.S. at 678) (internal quotation marks omitted).

Renda also asserts that Arbitron's pleading is deficient because Arbitron does not allege with specificity "which reports or databases Renda allegedly received during this broad time frame, which of the fourteen allegedly 'relevant' reports or databases were copied," or "when" the allegedly infringing activity took place.  Motion at 7-8.  However, to state a claim for copyright infringement, a claimant need only allege ownership of a valid copyright and copying of constituent elements that are original. <u>Latimer</u>, 601 F.3d at 1232-33.  Upon review of the Amended Complaint, the Court finds that Arbitron has sufficiently pled both elements. Arbitron has alleged that it "is the owner of registered copyrights in the Arbitron Reports and Databases and the audience estimates contained therein." Amended Complaint at ¶ 9.  The Copyright Act provides that in a judicial proceeding, "the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright[.]"  17 U.S.C. § 410(c).  In its Amended Complaint, Arbitron lists the copyright registration numbers for fourteen works that it alleges, "[u]pon information and belief, . . . are relevant to this action." Amended Complaint at ¶ 9.[1] Arbitron

---

[1] Arbitron also states that it "has applied for but has not yet received copyright registrations for additional periods within the time frame of the events relevant to this action."  Amended Complaint at ¶ 9.

has also attached the certificates of registration to its Amended Complaint.  See id. Exhibit 1.[2]

Arbitron has also sufficiently pled that Renda copied its copyrighted works.  Arbitron alleges that Renda subscribed to Arbitron's radio audience estimates and Reports for its Jacksonville stations from May 2008 to December 2010, but chose not to renew its subscription at the end of 2010.  Id. at ¶¶ 13, 15.  Arbitron alleges that "[b]eginning in or about May, 2011 and continuing through at least December, 2012, Renda illicitly obtained copies of Arbitron Reports and Database [sic] including audience estimates and station ratings from [the Agency,]" which was an Arbitron subscriber.  Id. at ¶ 19.  Arbitron asserts that "[u]pon information and belief, Bill Reese, the General Manager of Renda's Jacksonville stations [sic] requested and received the copyrighted Arbitron Reports or Databases . . . from the Agency, which he then reproduced and distributed."  Id. at ¶ 21.  Arbitron also alleges that "on at least one occasion in 2012, Renda on-air morning radio personality Arthur Crofton obtained Arbitron Reports and audience estimates contained in the Databases from the same Agency that provided these materials to Mr. Reese."  Id. at ¶ 28.  Therefore, according to Arbitron, in "obtaining, printing, copyright and distributing Arbitron's Reports without a license and without Arbitron's consent, Renda has infringed Arbitron's copyrights in Arbitron Reports[.]"  Id. at ¶ 31.

To require Arbitron to allege for each specific Report and Database Renda allegedly illicitly received, reproduced, and distributed the specific dates on which these actions

---

[2] "When considering a motion to dismiss, 'all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).  Exhibits that are attached to a pleading are considered part of the pleading for all purposes.  Fed. R. Civ. P. 10(c).

occurred would impose an unwarranted heightened pleading burden on Arbitron. See Klein & Heuchan, Inc. v. Costar Realty Info., Inc., No. 8:08-cv-1227-T-30EAJ, 2009 WL 963130, at *2 (M.D. Fla. April 8, 2009) (finding that "[c]opyright infringement does not require a heightened standard of pleading because it does not fall into the exception to Rule 8" and as such, rejecting the contention that the plaintiff must plead "by what acts and during what time frame" the defendant infringed on the copyright). Nevertheless, even applying a heightened pleading standard, Arbitron's allegations state a claim. See SunGard Pub. Sector, Inc. v. Innoprise Software, Inc., N., No. 6:10-cv-1815-Orl-28GJK, 2012 WL 360170, at *2 (M.D. Fla. Feb. 2, 2012). Arbitron has alleged the twenty-month time frame (May 2011 to December 2012) during which the alleged infringement took place, as well as how and by what acts Renda received the copyrighted works. Arbitron has further listed fourteen "relevant" works whose copyright dates span April 27, 2011, to August 6, 2012. Arbitron has also identified two individuals (Reese and Crofton) who allegedly requested and obtained these Reports and Databases from the Agency.[3] These allegations provide sufficient "factual content" to allow the Court "to draw the reasonable inference that [Renda] is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The additional factual specificity sought by Renda can be obtained through the ordinary discovery process.

Additionally, Renda argues that Arbitron's pleadings are deficient because Arbitron does not allege "whether the materials in their entirety were copied and distributed" or whether only portions were copied, since compilations are eligible for copyright protection but

---

[3] Arbitron alleges additional factual details, including an e-mail address used to obtain the Reports and Databases and that Reese and Crofton both communicated to the Agency that they would be discreet with the copyrighted works. See Amended Complaint at ¶¶ 24, 26, 29.

the underlying facts in a compilation are not.[4]  Motion at 7 (citing <u>Feist</u>, 499 U.S. at 349, 351).

Although Renda is correct in that the facts comprising a compilation are not, in and of

themselves, copyrightable, its argument ignores the fact that Arbitron has alleged that Renda

"reproduced" the copyrighted works, implying wholesale copying of the works.   For the

purposes of resolving the Motion, "the Court must view the allegations of the complaint in the

light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept

all reasonable inferences therefrom."   <u>Omar ex rel. Cannon</u>, 334 F.3d at 1247.   Thus, the

question of whether Renda copied protectible portions of Arbitron's works or only unprotected

facts is not properly before the Court at this stage of the proceeding.   Moreover, Renda's

argument that "simply having been given a copy of allegedly copyrighted material does not,

on its own, establish copyright infringement, absent evidence of copying or inducement[,]"

Motion at 7, is similarly inapposite.   Arbitron alleges that Renda's Reese requested the works,

and further that he "reproduced and distributed" the copyrighted works "to others at the

Jacksonville stations, including, but not limited to, WGNE Sales Manager Charlie Jennings

and Renda Jacksonville Program Director Chuck Beck."   These allegations combined with

the remainder of the assertions supporting the First Claim for Relief are sufficient to state a

claim that is plausible on its face.

### 2.     Inducement to Infringe Copyright

In its Second Claim for Relief, Arbitron alleges that Renda is liable for contributory

copyright infringement because it induced the Agency to infringe Arbitron's copyright.

---

[4] The Copyright Act defines a "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.

Amended Complaint at ¶¶ 36-44.  "One infringes contributorily by intentionally inducing or encouraging direct infringement[.]" <u>Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.</u>, 545 U.S. 913, 930 (2005).  Thus, "[c]ontributory infringement necessarily must follow a finding of direct or primary infringement."  <u>Cable/Home Commc'n Corp. v. Network Prods., Inc.</u>, 902 F.2d 829, 845 (11th Cir. 1990).  The Eleventh Circuit Court of Appeals has stated the "well-settled test for a contributory infringer as 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'" <u>Id.</u> (citations omitted).  The court has also explained "that '[t]he standard of knowledge is objective: Know, or have reason to know.'" <u>Id.</u> (alteration in original) (internal quotations marks omitted). Therefore, to establish a prima facie case of contributory infringement, Arbitron must allege: (1) a direct infringement, (2) that Renda had knowledge of the direct infringement, and (3) that Renda intentionally induced, encouraged, or materially contributed to the direct infringement. <u>See</u> <u>Lifetime Homes, Inc. v. Residential Dev. Corp.</u>, 510 F. Supp. 2d 794, 808 (M.D. Fla. 2007).

Upon consideration of the Amended Complaint, the Court is of the view that Arbitron has pled a sufficient claim of contributory copyright infringement.  Arbitron has pled direct infringement by the Agency in alleging that during May 2011 to December 2012, the Agency was an Arbitron subscriber; that under the terms of its agreement with Arbitron, the Agency was not permitted to disclose or share the Arbitron Reports or Databases with non-subscribers, like Renda; and that at Renda's request, from May 2011 to December 2012, the Agency did, in fact, provide Renda with copies of the copyrighted Arbitron Reports and Database materials.  Amended Complaint at ¶¶ 17, 19-20, 21, 37-39.  Arbitron has also

alleged that Renda had knowledge of the direct infringement by pleading that "[a]t the time, Renda was aware that these Arbitron materials were copyrighted works, that the Agency was not permitted to provide them to Renda, and that for the Agency to reproduce and send these materials to Renda would constitute copyright infringement."[5]  Id. at ¶ 38.  Additionally, Arbitron has pled that Renda intentionally induced, encouraged, or materially contributed to the direct infringement by alleging that "[u]pon information and belief, on numerous occasions throughout 2011 and 2012, Renda requested, verbally and by e-mail, that the Agency, an Arbitron subscriber, provide it with Arbitron's copyrighted Reports and Database material including Arbitron's audience estimates."[6] Id. at ¶ 37; see Celestial Arts., Inc. v. Neyler Color-Lith Co., 339 F. Supp. 1018, 1019 (E.D. Wis. 1971) ("It is well settled that all parties who unite to produce counterfeit copies of copyrighted material are liable for damages.").

Renda argues that Arbitron's copyright inducement claim should be dismissed because Arbitron fails to identify "the Agency" "that Renda allegedly induced into giving it

---

[5] Arbitron also specifically alleges facts regarding two individuals, Bill Reese and Arthur Crofton, who allegedly induced this infringement.  Amended Complaint at ¶¶ 21, 28-29.  Nonetheless, Renda argues that "Arbitron cannot dispute that the Amended Complaint fails to allege that the Jacksonville employees who allegedly committed the inducing acts (Bill Reese and Arthur Crofton) had actual knowledge (or reason to know that) that the Reports were copyrighted." Reply at 4. However, the named defendant in this action is Renda, and Arbitron has sufficiently pled facts showing that "Renda was aware" of all the facts that made the Agency's actions direct infringement. Cf. Coton v. Televised Visual X-Ography, Inc., 740 F. Supp. 2d 1299, 1310 (M.D. Fla. 2010) (finding the plaintiff had failed to show the defendants had knowledge of the infringement by "merely assert[ing] conclusory allegations and legal conclusions that the defendants had 'knowledge of the infringing activity' and that their infringing 'conduct . . . [was] willful and intentional'").

[6] Renda challenges this allegation as it is based on "information and belief." See Motion at 6-7. However, the Court reiterates that pleading on "information and belief" is not, itself, a basis for dismissal. Latele, 2013 WL 1296314, at *11. Additionally, Arbitron has alleged several specific facts relating to Renda's alleged copyright inducement, including what e-mail address was allegedly used, who was involved, and that Reese and Crofton indicated to the Agency they would be discreet with the copyrighted Reports and Databases. Amended Complaint at ¶¶ 24, 26, 28. Thus, the Court again finds that Renda's allegations "make the inference of culpability plausible." Associated Indus., 2013 WL 1176252, at *3.

Arbitron's [R]eports and [D]atabases." Motion at 8. As a result of this deficiency, Renda asserts that Arbitron's claim has failed to impart "fair notice." Id. (citing Twombly, 550 U.S. at 555 and Fed. R. Civ. P. 8(a)(2)). However, Renda cites to no authority in its Motion or Reply to support this assertion, and the Court, in its independent research, has found no authority requiring a contributory infringement claimant to specifically identify the direct infringer in order to state a claim. Further, the identity of the Agency is not required to give Renda fair notice of Arbitron's claims against it, particularly here, when Arbitron has identified two Renda employees who allegedly induced the Agency's infringement. Therefore, to the extent the identity of the direct infringer is not an element of an inducement claim, Arbitron is not required to identify the Agency by name in order to state a claim. For these reasons, the Court determines that Arbitron's First and Second Claims for Relief are not subject to dismissal for failure to state a claim upon which relief can be granted.

### B.    Rules 8 and 10[7]

Renda also asserts that Arbitron's First and Second Claims for Relief violate Rules 8 and 10 because they impermissibly lump multiple claims together. Specifically, Renda argues that in both claims, "Arbitron identifies fourteen separate alleged copyrights[,]" but "[a]ny allegation that Renda might have infringed one of Arbitron's allegedly copyrighted materials is insufficient to sustain an allegation that Renda necessarily infringed another of the alleged copyrights."[8] Motion at 9. As such, Renda asserts that "[s]eparate and distinct

---

[7] Because Renda combines its Rule 10(b) and shotgun pleading arguments for the First and Second Claims for Relief, the Court will do the same.

[8] The Court also notes that R.F.M.A.S., Inc. v. Mimi So, 619 F. Supp. 2d 39, 50 (S.D.N.Y. 2009), the case cited by Renda, does not stand for this assertion. Rather, the court in R.F.M.A.S. ruled on
(continued...)

allegations are required to show that any particular alleged copyright was infringed." Id. at 9-10.  In response, Arbitron argues that its allegations apply to each of the fourteen copyrighted materials and, as such, "[t]here is no clarity to be had by duplicating the allegations and counts, once for each of Arbitron's copyrights."  Opposition Memorandum at 12.

Rule 8 requires only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Further, the Rule directs that "[e]ach allegation must be simple, concise and direct."  Fed. R. Civ. P. 8(d)(1). Additionally, Rule 8(d)(2) does not permit a plaintiff to plead two separate and independent causes of action in one count of a complaint.  See Green v. C.B. Fleet Holding Co., No. 07-80589-CIV, 2008 WL 113668, at *2 (S.D. Fla. Jan. 8, 2008) (plaintiff's interpretation that Rule 8(d)(2) permits two causes of action based on different theories of recovery - fraud and negligent representation - in one count "collides with the requirement of Rule 10(b)"); Fed. Ins. Co. v. Bonded Lightning Protection Sys., Inc., No. 07-80767-CIV, 2008 WL 5111260, at *6 (S.D. Fla. Dec. 3, 2008) (same; directing plaintiff to amend complaint to assert separate counts for each type of alleged warranty breached rather than including allegations of breach of multiple warranties in one count).

---

[8](...continued)
summary judgment and did not address the propriety of pleading copyright infringement with regard to multiple copyrights.

Rule 10(b) provides, in pertinent part:

> If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . .

Fed. R. Civ. P. 10(b).  The Eleventh Circuit has explained that Rule 10(b) requires "that discrete claims should be pled in separate counts."  <u>Magluta v. Samples</u>, 256 F.3d 1282, 1284 (11th Cir. 2001); <u>see</u> <u>also</u> <u>Anderson v. Dist. Bd. of Trustees of Centr. Fla. Cmty. Coll.</u>, 77 F.3d 364, 366 (11th Cir. 1996) (a properly drawn complaint "will present each claim for relief in a separate count, as required by Rule 10(b)").  Additionally, the Eleventh Circuit has explained that Rules 8 and 10 work together

> to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

<u>Fikes v. City of Daphne</u>, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation omitted).  However, "[s]eparation, under [Rule] 10(b), is discretionary and unnecessary if the claims arise from the same actions or underlying circumstances."  <u>Capital Factors, Inc. v. Heller Fin., Inc.</u>, 712 F. Supp. 908, 911 (S.D. Fla. 1989) (citation omitted).

In the operative Complaint, Arbitron has pled separate each theory of relief in a separate count.  Arbitron's First Claim for Relief alleges a claim for copyright infringement.  Arbitron's Second Claim for Relief alleges a claim for contributory copyright infringement.  Each of these claims is against one defendant for a series of alleged actions spanning a twenty-month period.  Renda asserts that "infringement of each specific copyright will require different evidence" and "theoretically the Court could find that Renda violated none or some,

but not other, alleged copyrights." Motion at 10.  Indeed, at the next stage of the proceeding, the evidence may demonstrate that Renda infringed some, none, or all of the copyrights identified by Arbitron in its Amended Complaint.  However, Arbitron has alleged that each of these fourteen copyrights is "relevant," and in ruling on a motion to dismiss, the Court accepts the factual allegations set forth in the complaint as true.  Further, requiring Arbitron to plead a separate claim for each allegation relating to each of the fourteen identified copyrights would not serve Rule 10(b)'s purpose of "promot[ing] clarity."  Fed. R. Civ. P. 10(b).  Rather, such a requirement would produce a muddled and unnecessarily redundant complaint.  Therefore, since the Court finds that Arbitron's claims arise from the same actions and underlying circumstances, the Court declines to require separation of the claims relating to the identified copyrights.

### C.   Shotgun Pleading

Renda also asserts that even if separate claims are not required, "Arbitron failed to make it clear which allegations relate to which alleged copyrights, leaving it unclear which allegations pertain to which [R]eport or [D]atabase." Motion at 10.  According to Renda, "the Amended Complaint remains a confusing shotgun-style pleading." Id.  Arbitron disagrees, asserting that while the claims share some factual overlap, the Amended Complaint, nonetheless, identifies the specific allegations applicable to each claim for relief.  Opposition Memorandum at 14.

 A shotgun complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C.

v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002).  Consequently, in ruling on the sufficiency of a claim, the Court is faced with the onerous task of sifting out irrelevancies in order to decide for itself which facts are relevant to a particular cause of action asserted.  See id.

Upon review, the Court determines that the Amended Complaint is permissibly pled. Arbitron's original Complaint was, indeed, a shotgun complaint, which this Court struck sua sponte leading Arbitron to amend.  In its Amended Complaint, Arbitron does not re-allege the allegations of each proceeding claim into the next, but rather re-alleges a specific set of factual allegations for each claim for relief.  See generally Amended Complaint.  Additionally, as discussed above and as explained by Arbitron, the fourteen copyrights are all "relevant" to both of its copyright claims, which are founded upon a relatively narrow set of circumstances.  Consequently, the claims are bound to share some factual overlap.  Upon review, the Court notes that the Amended Complaint is still relatively short, and given Arbitron's claims, it appears that the facts alleged in the general factual allegations would likely be re-alleged in support of Arbitron's claims. The Court declines to require the kind of surgical precision in drafting that Renda seeks.  Renda is given adequate notice of the claims against it.  Additionally, the Court is of the view that Renda can frame an appropriate response to the Amended Complaint as drafted.  As such, the Court determines that the First and Second Claims for Relief are adequately pled and not subject to dismissal at this time.

### D.    FDUTPA

In its Third Claim for Relief, Arbitron alleges that Renda is liable under FDUTPA, see Amended Complaint at ¶¶ 45-51, which prohibits "[u]nfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of

any trade or commerce[.]" FLA. STAT. § 501.204(1).[9]  Arbitron alleges that Renda violated

FDUTPA by "improperly acquir[ing] and us[ing] Arbitron's copyrighted and/or proprietary

Reports, audience estimates and ratings without obtaining a license or authorization from

Arbitron." Amended Complaint at ¶ 46.  Specifically, Arbitron asserts that "Renda made

programming decisions and/or determined the rates to charged [sic] for advertising time for

its Jacksonville, Florida radio stations using Arbitron's copyrighted" material.  Amended

Complaint at ¶ 48.  Renda argues that Arbitron fails to state a claim under FDUTPA because

(1) the Copyright Act preempts Arbitron's FDUTPA claim; (2) even if its not preempted,

Arbitron's FDUTPA claim fails to set forth plausible grounds for relief; and (3) Arbitron's claim

fails to allege wrongdoing of the type FDUTPA is meant to address.  See Motion at 10-18.

### 1.    Preemption of FDUTPA

The Copyright Act expressly preempts

> legal or equitable rights [under state law] that are equivalent to
> any of the exclusive rights within the general scope of copyright
> as specified by section 106 in works of authorship that are fixed
> in a tangible medium of expression and come within the subject
> matter of copyright as specified by sections 102 and 103.

17 U.S.C. § 301(a).  The Eleventh Circuit employs a two-part test to copyright preemption

claims.  "Preemption occurs if the rights at issue (1) 'fall within the subject matter of copyright

set forth in sections 102 and 103' and (2) 'are equivalent to the exclusive rights of section

106.'"  Lipscher v. LRP Publ'ns, Inc., 266 F.3d 1305, 1311 (11th Cir. 2011) (citing Crow v.

---

[9] "[T]he 1993 amendments to FDUTPA made clear that the statute is not limited to purely consumer transactions.  It is now intended by its plain text to apply to any act or practice occurring 'in the conduct of any trade or commerce' [e.s.] even as between purely commercial interests."  Beacon Prop. Mgmt., Inc. v. PNR, Inc., 890 So.2d 274, 278 (Fla. Dist. Ct. App. 2004) (emphasis in original).

Wainwright, 720 F.2d 1224, 1225-26 (11th Cir. 1983)).  The first prong is not at issue in this case because the parties do not dispute that Arbitron's Reports and Databases are copyrightable as factual compilations, thus falling within the subject matter of copyright.  See id. ("'[I]t is beyond dispute that compilations of facts are within the subject matter of copyright.'") (quoting Feist, 499 U.S. at 345).  Rather, Renda asserts that Arbitron's FDUTPA claim is preempted because, under the second prong of the Eleventh Circuit's preemption analysis, the rights Arbitron asserts under FDUTPA are equivalent to the exclusive rights provided by section 106 of the Copyright Act.  See Motion at 12-14.

The Eleventh Circuit has recognized that "'the [Copyright] Act preempts only those state law rights that may be abridged by an act which, in and of itself, would infringe one of the exclusive rights provided by federal copyright law.'" Lipscher, 266 F.3d at 1311 (quoting Foley v. Luster, 249 F.3d 1281, 1285 (11th Cir. 2001)) (internal quotations omitted) (alteration in original). The exclusive rights under the Copyright Act include the rights to reproduce the copyrighted work, to prepare derivative works, and to distribute copies to the public.  See 17 U.S.C. § 106.  To determine whether an overlap exists, the Eleventh Circuit employs an "extra element" test.  "'[I]f an extra element is required instead of or in addition to the acts of reproduction, performance, distribution, or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright and there is no preemption.'"  Foley, 249 F.3d at 1285 (quoting Computer Assoc. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 716 (2d Cir. 1992)).  "'[A] state law claim is not preempted if the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim.'"  Id. (quoting Altai, 982 F.2d at 716) (emphasis in original).

-18-

Taking the allegations of the Amended Complaint as true and accepting all reasonable inferences therefrom, the Court declines to conclude at this early stage of the litigation that Arbitron's FDUTPA claim is preempted by the Copyright Act. Renda asserts that the alleged "use" is based on nothing more than acts which are covered by the Copyright Act. <u>See</u> Motion at 12-14. However, Arbitron does not allege that its FDUTPA claim arises from Renda's unlawful copying or distribution of its works, but rather from Renda's "use" of the Reports, audience estimates and ratings "for a variety of purposes[,]" including making programming decisions and determining the rates for advertising time for its Jacksonville, Florida radio stations. <u>See</u> Amended Complaint at ¶¶ 46-48. Further, Arbitron does not rely on Renda's alleged "use" of the copyrighted works in making its copyright infringement claims. <u>See</u> <u>Pegasus Imaging Corp. v. Northrop Grumman Corp.</u>, No. 8:07-CV-1937-T-27EAJ, 2008 WL 5099691, at *5 (M.D. Fla. Nov. 25, 2008) ("Where . . . the only unfair or deceptive practice is the same conduct which forms the basis of the plaintiff's copyright claim, the FDUTPA claim is preempted."). Arbitron's FDUTPA claim is also not equivalent to an allegation that Renda violated Arbitron's exclusive right to prepare derivative works.[10]

The cases cited by Renda in support of its preemption claim are simply not factually analogous. In <u>Lipscher</u>, the Eleventh Circuit determined that the plaintiff's state law deceptive trade practices claim, which was based on the defendant's "acquisition misconduct" in obtaining a subscription to the plaintiff's legal newsletters by "false pretense,"

---

[10] The Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works . . . in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. "A work consisting of editorial revisions, annotations, elaborations, or other modifications [to a preexisting work that], as a whole, represent an original work of authorship, is a 'derivative work.'" <u>Id.</u> Arbitron has not alleged, and the facts do not indicate, that Renda's use of the Reports and Databases was to create a "derivative work" in which Arbitron's compilations were "recast, transformed, or adapted."

was preempted by the Copyright Act. <u>Lipscher</u>, 266 F.3d at 1312.  Similarly, in <u>Marc Anthony</u>

<u>Builders, Inc. v. Javic Properties, LLC</u>, No. 8:11-CV-00432-EAK-AEP, 2011 WL 2709882

(M.D. Fla. July 12, 2011), the plaintiff alleged that the defendants "'each intentionally and

knowingly copied and profited from their use'" of the plaintiff's architectural plans.  <u>Marc</u>

<u>Anthony</u>, 2011 WL 2709882, at *3.  Because the plaintiff's FDUTPA claim was premised

entirely on an allegation of copying alone, the court found the Copyright Act preempted that

claim.  <u>Id.</u> at *4.  In contrast, Arbitron's FDUTPA claim is not premised solely on Renda's

alleged "acquisition misconduct" or Renda's alleged reproduction and distribution of the

Reports and Databases.  Rather, Arbitron's FDUTPA claim is based on Renda's alleged

"use" of the Reports and Databases after acquiring them.  Further, despite the fact Renda

has labeled Arbitron's FDUTPA claim as an allegation of "generic misuse," Renda has not

cited, and the Court has not located, any authority requiring something more to state a claim

under FDUTPA.  <u>Cf.</u> <u>R. Miller Architecture, Inc. v. Edgington Enters., Inc.</u>, No. No. 6:06-cv-

871-Orl-19DAB, 2007 WL 496614, at *4-6 (M.D. Fla. Feb. 12, 2007) (finding that the plaintiff's

FDUTPA claim based on the defendant's "deceptive misuse" of the plaintiff's architectural

plans in a "passing off" scheme was not preempted by the Copyright Act because the

defendant's conduct could cause "confusion" and "potential liability").  Thus, to the extent

Renda's alleged "use" of Arbitron's Reports and Databases is a required element of Arbitron's

FDUTPA claim, then this claim is not equivalent to the exclusive rights protected under the

Copyright Act.[11]  The Court cannot conclusively determine at this stage of the proceeding

---

[11] In contrast, in <u>Olem Shoe Corp. v. Washington Shoe Co.</u>, No. 09-23494-CIV, 2011 WL
6202282 (S.D. Fla. Dec. 1, 2011), the court concluded that the plaintiff's state law deceptive and unfair
trade practices claims were preempted by the Copyright Act where the plaintiff alleged the defendant
(continued...)

whether Arbitron's FDUTPA claim will ultimately be materially different in substance from its copyright claims.  However, given the liberal standard of review applicable to a motion to dismiss under Rule 12(b)(6), at this stage, it appears Arbitron has sufficiently pled an "extra element."  As such, the Court finds that Arbitron's FDUTPA claim is not preempted.[12]

## 2.    Failure to State a Claim

To state a claim under FDUTPA, a party must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.  Intercoastal Realty, Inc. v. Tracy, 706 F. Supp. 2d. 1325, 1333 (S.D. Fla. 2010).  FDUTPA's stated purpose is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  FLA. STAT. § 501.202(2).  The statute does not define "unfair and deceptive act or practice."  Intercoastal Realty, 706 F. Supp. 2d at 1333.  However, "[t]he concept of 'unfair and deceptive' conduct is extremely broad," TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC, 945 F. Supp. 2d 1331, 1344 (M.D. Fla. 2013) (citing cases), and "the provisions of the [FDUTPA] are to be 'construed liberally[,]'" Intercoastal Realty, 706 F. Supp. 2d at 1333 (citing FLA. STAT. § 501.202).  An unfair practice is one that "'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous, or

---

[11](...continued)
infringed the patterned designs on the plaintiff's boots.  Olem Shoe, 2011 WL 6202282, at *23-24.  The protection sought by the plaintiff "with respect to its copyrighted patterned designs, derive[d] directly from three of the exclusive rights" the plaintiff has under section 106, including the right to reproduce the work in copies, to prepare derivative works based upon the copyrighted work, and to distribute copies of the copyrighted work to the public.  Id. at *23.  In the instant case, Arbitron's FDUTPA claim is aimed at Renda's alleged use of the copyrighted works in making business decisions, and is not encompassed by any of the exclusive rights under section 106.

[12] This conclusion is based on the limited record and is without prejudice to the defense being renewed at the summary judgment phase should the facts and law support renewal.

substantially injurious to consumers.'" <u>Intercoastal Realty</u>, 706 F. Supp. 2d at 1333 (citing <u>PNR, Inc. v. Beacon Prop. Mgmt., Inc.</u>, 842 So.2d 773, 777 (Fla. 2003)).

Renda argues that Arbitron has failed to allege a plausible FDUTPA claim because Arbitron's pleadings are repetitive, rely upon information and belief, and are devoid of any specific facts that would permit Renda to be able to respond. <u>See</u> Motion at 14-16. Specifically, Renda cites Arbitron's failure to sufficiently plead what information from the Reports and Databases Renda allegedly used and how Renda allegedly used this information. <u>See</u> Motion at 15-16.

Although Arbitron's FDUTPA allegations are brief, the Court concludes that Arbitron has pled sufficient facts to state a plausible claim for relief on its face. Arbitron has alleged that it is a "legitimate business enterprise" such that it can bring a FDUTPA claim for damages and injunctive relief. <u>See</u> Amended Complaint at ¶¶ 7-8. Arbitron has also pled an unfair act or practice by alleging that "Renda improperly acquired and used Arbitron's copyrighted and/or proprietary Reports, audience estimates and ratings" without a license or authorization. <u>Id.</u> at ¶ 46. Contrary to Renda's assertions that Arbitron has not sufficiently pled how Renda used this information, Arbitron has alleged that Renda used the Reports and Databases to make programming decisions and to determine the rates to charge for advertising time for its Jacksonville, Florida radio stations. <u>Id.</u> at ¶ 48. This allegation, though concise, is not merely a legal conclusion and imparts fair notice of Arbitron's FDUTPA claim and the grounds on which it rests.[13] Arbitron has also properly pled causation by

---

[13] Renda faults Arbitron's pleadings for failing to explain what information from the Reports and Databases Renda is alleged to have used. <u>See</u> Motion at 16. However, the Court has already concluded that Arbitron's list of fourteen "relevant" copyrights is sufficient to impart fair notice. Arbitron need not

(continued...)

alleging that "[b]y reason of the foregoing acts" Renda violated FDUTPA. <u>Id.</u> at ¶ 49.

Additionally, Arbitron has pled damages by alleging that "Arbitron is also entitled to recover

its actual damages in an amount to be determined at trial but in no event less than $500,000,

the exact amount to be determined at trial, plus attorney's fees and court costs[.]" <u>Id.</u> at ¶

51.

### 3.     Type of wrongdoing

Last as to Arbitron's FDUTPA claim, Renda argues that the claim should be dismissed

because Arbitron has failed to allege acts that would constitute violations under the statute.

<u>See</u> Motion at 16-18.  Specifically, Renda asserts that since Arbitron does not allege fraud,

misrepresentation, passing off, or harm to consumers, and because Renda is not a

competitor of Arbitron, Arbitron's FDUTPA claim is improper.  <u>See</u> Motion at 17-18.  Arbitron

asserts that "setting advertising rates and making programming decisions are part of

[Renda's] trade" such that Renda's alleged use of Arbitron's copyrighted works in this manner

constitutes an "unfair practice" under FDUTPA.  <u>See</u> Opposition Memorandum at 18.

Further, Arbitron maintains that FDUTPA does not require Arbitron and Renda to be

competitors. <u>See</u> <u>id.</u>

As with Renda's preemption claim, the Court declines to conclude at this early stage

of the litigation that Arbitron's FDUTPA claim fails to allege acts that would constitute

violations of the statute.   "FDUTPA's core prohibition is that it does not allow unfair or

deceptive practices in the conduct of 'trade or commerce.'" <u>James D. Hinson Elec.</u>

---

[13](...continued)
also plead what specific information from these Reports and Databases Renda is alleged to have used.

<u>Contracting Co., Inc. v. Bellsouth Telecomms., Inc.</u>, No. 3:07-cv-598-J-32MCR, 2008 WL 360803, at *3 (M.D. Fla. Feb. 8, 2008) (citing FLA. STAT. § 501.204(1)).  FDUTPA defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated."  FLA. STAT. § 501.203(8).  As previously noted, "the provisions of the [FDUTPA] are to be 'construed liberally.'"  <u>Intercoastal Realty</u>, 706 F. Supp. 2d at 1333 (citing FLA. STAT. § 501.202).  Here, it is undisputed that Renda owns and operates radio stations in several markets throughout the United States, including the Jacksonville, Florida area.  Amended Complaint at ¶ 4; Motion at 3.  As such, setting advertising rates and making programming decisions would seem to be an integral part of Renda's business.  Further, the Court determines that Renda's alleged conduct in illegally obtaining the Reports and Databases and using these copyrighted works without permission or a license could properly be considered offensive to "established public policy," as well as "immoral, unethical," and "unscrupulous" conduct.  Thus, while the Court may revisit the validity of Arbitron's FDUTPA claim in light of Renda's alleged conduct after some legal and factual development, the Court is not prepared to dismiss the claim on this basis at this early date.[14]

---

[14] The Court also declines to dismiss Arbitron's FDUTPA claim on the grounds that Arbitron fails to allege fraud, misrepresentation, passing off, or harm to consumers, or on the grounds that Renda is not a competitor of Arbitron.  While many FDUTPA cases do rest on such allegations, see, e.g., <u>Hill v. Hoover</u>, 899 F. Supp. 2d 1259, 1263-1265 (N.D. Fla. 2012) (consumer plaintiff stated a claim under FDUTPA based on allegation that manufacturer defendants made false representations regarding the quality of a vacuum steam cleaner), the Court is not convinced that Renda's alleged conduct could not possibly fall under the purview of FDUTPA.  Further, the fact that Arbitron is not a consumer and Renda is not a competitor of Arbitron is of no import because FDUTPA also protects "legitimate business enterprises" from "unfair acts or practices."

## IV.     Conclusion

Arbitron has sufficiently stated a claim under Rule 8(a) with regard to its First, Second, and Third Claims for Relief.  Additionally, Arbitron's pleadings in the First and Second Claims for Relief do not violate Rules 8 or 10 in that they do not impermissibly lump claims together. Arbitron's claims also do not constitute shotgun pleadings.  Further, the Court declines to conclude, at this stage of the litigation, that Arbitron's FDUTPA claim is preempted by the Copyright Act.  Accordingly, it is hereby **ORDERED**:

Defendant Renda Broadcasting Corporation's Motion to Dismiss Plaintiff's First Amended Complaint and Memorandum of Legal Authority in Support (Doc. No. 16) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, this 27th day of March, 2014.

**MARCIA MORALES HOWARD**
United States District Judge

lc18

Copies to:

Counsel of Record